IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| ALCYDEE CHARLES | § | CASE NO: 05-95071 |
|    Debtor | § | |
| | § | CHAPTER  13 |

## MEMORANDUM OPINION

On November 18, 2005, the Court conducted a hearing on Debtor's Amended Emergency Motion for Continuation of the Automatic Stay [docket no. 10].  Debtor's motion requests this Court enter an Order continuing the automatic stay as to all creditors pursuant to 11 U.S.C. § 362(c)(3)(B).  For the reasons stated below, the Court extends the stay as to all creditors.

### Background

Alcydee Charles filed this bankruptcy case on October 31, 2005.  Prior to filing this case, Ms. Charles was a debtor in a previous chapter 13 case that was voluntarily dismissed on July 6, 2005.  Ms. Charles voluntarily dismissed her previous case after she was requested to do so by her largest secured creditor, Citifinancial Mortgage Company ("Citifinancial").  Citifinancial is the holder of a note, secured by a deed of trust against Ms. Charles' homestead.  Ms. Charles dismissed her previous case in order for negotiations to proceed with Citifinancial concerning her ability to restructure the note.  The principal issue in the restructuring concerned an advance made by Citifinancial to pay property taxes owed on Ms. Charles' homestead.  Ms. Charles' adult daughter, Carla Charles, has been in control of her mother's finances for six to seven years.  Both Alcydee and Carla Charles incorrectly believed that the monthly mortgage payments to Citifinancial included a sufficient escrow amount for property taxes.  The negotiations outside bankruptcy failed and Ms. Charles filed the present case after her homestead was again posted for foreclosure.

On October 17, 2005, most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective.  The Act dramatically modifies the automatic stay provisions under § 362 of the Bankruptcy Code.  One significant change affects individuals who have been in a previous bankruptcy case "pending within the preceding 1-year period…." 11 U.S.C. § 362(c)(3).  Section 362(c)(3)(A) provides that the automatic stay shall terminate on the 30th day after the filing of a case if the debtor has had a case pending within the preceding one-year period.

Section 362(c)(3)(B) provides for the possibility of continuing the stay beyond the original 30-day period if four requirements are met: (1) a motion is filed; (2) there is notice and a hearing; (3) the notice and hearing are completed before the expiration of the original 30-day stay; and (4) the debtor proves that the filing of the new case "is in good faith as to the creditors to be stayed."  11 U.S.C. §362(c)(3)(B); *In re Charles,* 332 B.R. 538, 541 (Bankr. S.D. Tex. 2005).  If these requirements are met, a court may extend the stay "subject to such conditions or limitations as the court may then impose."  11 U.S.C. § 362(c)(3)(B).

Ms. Charles filed her original motion to extend the automatic stay on October 31, 2005.  The original motion set forth a colorable basis for an extension of the automatic stay only against Citifinancial, but sought an extension as to all creditors.  On November 1, 2005, the Court set a hearing date for the motion with respect to Citifinancial, denied the requested relief as to all other creditors, and granted Ms. Charles leave to file an amended motion setting forth a basis for an extension against all creditors.

Ms. Charles filed an amended emergency motion for continuation of the stay on November 2, 2005.  Adequate notice of the motion was given to the creditors listed on Ms. Charles' schedules on the same day.  On November 18, 2005, the Court held a hearing on this

matter.    Accordingly, the Court has the discretion to extend the stay if Ms. Charles proves that

the filing of this case is in good faith as to the creditors to be stayed.

### Burden of Proof

Before the Court analyzes the applicable factors for determining whether the case was

filed in good faith as to the creditors to be stayed, the Court must determine the nature of the

burden of proof on the debtor.   For the reasons set forth in detail below, the Court finds that the

burden of proof on a motion to extend the automatic stay is allocated as follows:

| Issue | Evidentiary Standard | Party with Burden |
|---|---|---|
| 1. Whether a rebuttable presumption arises under § 362(c)(3)(C) that the case was not filed in good faith as to the creditor to be stayed. | Preponderance | As to whether more than one previous case was pending within the one-year period preceding the current case, the burden is on the opponent of an extension of the automatic stay. |
| | | As to whether a prior case was dismissed for one of the reasons set forth in § 363(c)(3)(C)(i)(II), the burden is on the opponent of the extension of the automatic stay. |
| | | As to whether there has been a change in circumstances or other reason to believe that the new case will result in a discharge, the burden of proof is on the debtor.[1] |
| | | As to a particular creditor that had filed a § 362(d) motion in a prior case that remained pending or that |

---

[1]   The Court recognizes that a party in interest other than the debtor may seek to extend the stay.  In this case, the party seeking the extension is the debtor.

| Issue | Evidentiary Standard | Party with Burden |
|---|---|---|
| | | had resulted in an order terminating, conditioning or limiting the automatic stay as to that creditor, the burden of proof is on the opponent of the extension of the automatic stay. |
| 2. If a rebuttable presumption arises, whether the case was filed in good faith as to the creditors to be stayed. | Clear and convincing | Debtor |
| 3. If a rebuttable presumption does not arise, whether the case was filed in good faith as to the creditors to be stayed. | Preponderence | Debtor |
| 4. Whether the Court should exercise its discretion to extend the automatic stay. | Preponderance | Debtor |

The plain language of § 362(c)(3)(B) instructs that the automatic stay may be extended—when the movant "demonstrates that the filing of the later case is in good faith as to the creditors to be stayed." Accordingly, Ms. Charles bears the burden of proving that this case is filed in good faith as to the creditors to be stayed.

However, before addressing whether this new case has been filed in good faith as to Ms. Charles' creditors, the Court must first determine whether the statute imposes a rebuttable presumption against Ms. Charles. If the Court finds that her case is presumptively filed in bad faith, her burden becomes more onerous.

A case is presumed to not be filed in good faith if: (i) the debtor had more than one previous case pending during the previous year; (ii) a case pending within the previous year was dismissed for failure to file certain required documents, provide adequate protection, or perform under a confirmed plan; or (iii) there has not been a substantial change in the financial or personal affairs of the debtor since the most recent case was dismissed or there is no other reason to determine that the new case will result in a discharge.  11 U.S.C. § 362(c)(3)(C)(i).  A case is further presumed to not be filed in good faith as to any creditor that sought relief from the stay in a previous case if upon dismissal of the previous case the stay relief motion was still pending or the action had been resolved by terminating, conditioning, or limiting the stay as to the actions of the creditor.  § 362(c)(3)(C)(ii).  Under § 362(c)(3)(B), a debtor may only rebut the presumption that a case is not filed in good faith "by clear and convincing evidence to the contrary."  11 U.S.C. § 362(c)(3)(B).

The clear and convincing standard only arises if there is a presumption (based on one of the foregoing factors) that the case was not filed in good faith.  The statute does not address what standard of proof applies in determining whether one of the presumption factors exists and the statute does not address which party has the burden of proof with respect to the presumption factors.  Absent a statute or rule to the contrary, the burden of proof in a bankruptcy case is by a preponderance of the evidence.  *See, e.g., In re Keaty*, 397 F.3d 264, 270 (5th Cir. 2005) (burden of proving nondischargeability by preponderance of evidence); *In re Briscoe Enters., Ltd., II*, 994 F.2d 1160, 1165 (5th Cir. 1993) (debtor must prove plan's feasibility and fairness by preponderance of evidence for cramdown provisions to apply).  Inasmuch as the statute does not dictate an alternate standard, the Court requires proof by a preponderance of the evidence to determine if the presumption against Ms. Charles arises.

The first factor that can lead to a presumption that a case is not filed in good faith is if the individual was a debtor in more than one case under chapter 7, 11, or 13 pending within the preceding one-year period.  § 362(c)(3)(C)(i)(I).  Because the statute requires an affirmative determination that prior cases were pending, the burden of proof on this matter rests on a party opposing the extension of the automatic stay.

The second factor that can lead to a presumption that a case was not filed in good faith is if a prior case was dismissed within the preceding year after the debtor failed to file or amend required documents without substantial excuse, failed to provide adequate protection as ordered by the court, or failed to perform the terms of a confirmed plan.  § 362(c)(3)(C)(i)(II).  Because the statute requires an affirmative determination that the debtor has engaged in specified conduct, the burden of proof initially rests on the party alleging such conduct.[2]

The third factor that can lead to a presumption that a case was not filed in good faith is if "there has not been a substantial change in the financial or personal affairs of the debtor…. or any other reason to conclude that the latter case will be concluded" with a chapter 7 discharge or a confirmed, fully performed chapter 11 or 13 plan.  § 362(c)(3)(C)(i)(III).  This subsection contains the negative term "there has not been."  That clause requires proof that a substantial change has occurred.  Under traditional burden of proof rules, the burden with respect to a matter concerning facts that are peculiarly within the knowledge of one party will rest on that party.  *Campbell v. U.S.,* 365 U.S. 85, 96 (1961).  "Burden-shifting where one party has superior access to evidence on a particular issue is a common feature of our law."  *In re One Parcel of Prop. Located at 194 Quaker Farms Rd., Oxford, Conn.,* 85 F.3d 985, 990 (2d Cir. 1996) (citing John

---

[2]   With respect to § 362(c)(3)(C)(i)(II)(aa), the statute provides that the debtor's failure to file or amend the specified documents must have been "without substantial excuse" in the prior case.  Although the general burden would be on the non-debtor party, the burden of proof for the affirmative defense of "substantial excuse" rests on the debtor.  *F.T.C. v. Nat'l Business Consultants, Inc.*, 376 F.3d 317, 322 (5th Cir. 2004).

W. STRONG ET AL., MCCORMICK ON EVIDENCE § 337, at 570 (94th ed.1992)).  A debtor is in the unique position of best knowing her own changes in circumstances.  Accordingly, the Court places the burden of proof—by a preponderance of the evidence—on the debtor.

The fourth factor that can lead to a presumption that a case was not filed in good faith is applied to any creditor that filed a § 362(d) motion in a prior case filed by the debtor.  If the § 362(d) motion remained pending as of the date of dismissal or if the motion resulted in an order terminating, conditioning or limiting the automatic stay as to that creditor, the presumption arises.  Because the statute requires an affirmative determination with respect to the § 362(d) motion, the burden of proof on this matter rests on a party opposing the extension of the automatic stay

### Presumption Does Not Arise

Ms. Charles has only had one prior case pending in the past year.  This prior case was not dismissed for any of the reasons set forth in § 362(c)(3)(C)(i)(II).  Instead, Ms. Charles voluntarily dismissed her prior case.  Further, there has been a substantial change in Ms. Charles' financial affairs.  Ms. Charles' daughter has recently committed substantial additional funds to Ms. Charles by giving the chapter 13 trustee access to her checking account into which her payroll checks are directly deposited.  No creditor filed a motion under § 362(d) in the previous case.  Because none of the conditions of § 363(c)(3)(C) are satisfied, Ms. Charles need not overcome an evidentiary presumption that her case was not filed in good faith.  Accordingly, the Court finds that Ms. Charles must prove good faith by a preponderance of the evidence.

### Good Faith Analysis

Good faith is not defined in the Bankruptcy Code.  Courts, however, have utilized a "totality of the circumstances" test to determine whether a plan has been proposed in good faith

pursuant to § 1325(a)(3).  *See In re Chaffin*, 816 F.2d 1070, 1073 (5th Cir. 1987).  The test "exacts an examination of all the facts in order to determine the bona fides of the debtor."  *Id.* at 1074.  Factors to be considered include whether the debtor truly intends to effectuate rehabilitation and whether the plan evidences an attempt to abuse the spirit of the Bankruptcy Code.  *In re Ramirez*, 204 F.3d 595, 600-01 (5th Cir. 2000); *In re Chaffin*, 816 F.2d at 1073.  Other courts have considered similar factors when evaluating a debtor's good faith in proposing a chapter 13 plan.  *See, e.g., In re Vasquez*, 261 B.R. 654, 658 (Bankr. N.D. Tex. 2001); *Educ. Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir. 1987).[3]  No one factor is determinative.  Instead, under this test, a court should consider how the factors operate together in order to determine the existence of good faith.  *See, e.g., In re McLaughlin*, 217 B.R. 772, 775-76 (Bankr. W.D. Tex. 1998).

Although there is no express statutory requirement that a chapter 13 petition be filed in good faith, courts have adopted similar standards for the purpose of determining whether a chapter 13 case should be dismissed or converted to a case under chapter 7 pursuant to § 1307(c).  *See, e.g., In re Lancaster*, 280 B.R. 468, 474 (Bankr. W.D. Mo. 2002) (difference between good faith in filing a chapter 13 petition and good faith in proposing a chapter 13 plan is nominal and evidence of each may be considered together).[4]

---

[3] A non-exclusive list of factors used to determine whether a debtor's plan was filed in good faith include the following: amount of proposed payments, debtor's earning capacity, types of debts sought to be discharged, frequency with which debtor has sought bankruptcy relief, motivation and sincerity of the debtor, debtor's ability to pay, circumstances giving rise to the debts, the presence or absence of objections to the proposed plan, duration of the plan, accuracy of information provided by the debtor, whether the plan is preferential to certain creditors, whether the debts would be dischargeable in chapter 7, and whether the debtor seeks unfairly to manipulate provisions of the Code.  *See In re Vasquez*, 261 B.R. 654, 658 (Bankr. N.D. Tex. 2001).

[4] Factors considered in determining whether a chapter 13 petition was filed in good faith include: (1) whether there are any deficiencies or inaccuracies in the debtor's schedules or plan that might amount to an attempt to mislead the court; (2) whether payments proposed by the plan are fundamentally fair in dealing with creditors, including consideration of timing of filing, amount and proportion of debt that would not be dischargeable in a liquidation and equities of any classification; and (3) whether the debtor had any improper motivation in seeking relief, as indicated,

Good faith may be determined on both an objective basis and on a subjective basis.  *In re Coleman,* 426 F.3d 719, 728 (4th Cir. 2005) (holding that dismissal of a chapter 11 petition required a showing of both objective and subjective bad faith, with objective bad faith being determined by the futility of the bankruptcy reorganization or liquidation process).  For the purposes of objective good faith under § 362(c)(3), the Court analyzes whether this case is likely to result in a discharge.  For the purposes of subjective good faith, the Court employs the "totality of the circumstances" test in analyzing the debtor's motives and her relationship with her creditors.   In cases addressing a debtor's good faith in filing a petition or plan, the subjective analysis is generally performed only upon a determination that the debtor first establishes objective good faith.  *See In re Elmwood Dev. Co.*,  964 F.2d 508, 512 (5th Cir. 1992).[5] Accordingly, the Court is compelled to conclude that a subjective analysis must be undertaken under § 362(c)(3)(C) only if the debtor first establishes objective good faith.

This threshold test is adopted for several reasons.  First, the Court has difficulty conceiving of a case that could be filed in good faith without a reasonable probability of success. Put simply, it cannot be good faith to attempt to stay a creditor from proceeding if the debtor does not have a meaningful chance of success in the bankruptcy case.  Second, the Court is influenced by the language contained in § 362(c)(3)(C)(i)(III)(aa)-(bb), which requires an analysis of the likelihood of success on the merits of the new case.  Third, § 362(c)(3) and (c)(4) were apparently adopted to address a problem that posed significant concern under the prior version of the Bankruptcy Code.  The Court has witnessed numerous debtors who have filed a

---

in part, by circumstances under which debts were incurred.  *In re Ramji*, 166 B.R. 288, 290-91 (Bankr. S.D. Tex. 1993).  These factors are analyzed based on the totality of the circumstances.  *Id.*

[5] In *Elmwood Dev. Co.*, 964 F.2d 508 (5th Cir. 1992), the Court dismissed the debtor's petition as not filed in good faith, and concluded that no subjective analysis was required after it first determined that the case did not meet an objective good faith standard.  In *Elmwood*, the Fifth Circuit relied in part on an Illinois district court decision that held: "[O]nce a court has properly found that the debtor has failed to satisfy the court's objective good faith inquiry…it may properly dismiss the debtor's petition without considering the debtor's subjective good faith."  *Id.* at 512 n.14 (citing *In re McCormick*, 127 B.R.. 410, 415 (N.D. Ill. 1991)).

series of unsuccessful cases solely for the purpose of hindering and delaying their creditors. Contrary to its intended purpose, the automatic stay was being utilized as a sword rather than as a shield.  By adopting § 362(c)(3) and § 362(c)(4), Congress appears to have chosen to limit the stay in repeat cases to those with a meaningful chance of success.  In this Court's view, objective good faith requires that a debtor have a meaningful chance of success in the newly filed case.

In reviewing the Bankruptcy Code as a whole, Congress intended to give eligible debtors the opportunity to restructure their debts in a chapter 11 or chapter 13 case, and to discharge debts in accordance with § 1141 or § 1328.  Alternatively, individuals are eligible to liquidate their assets in a chapter 7 case, and may obtain a § 727 discharge.  But, if the newly filed case is futile or if the debtor is filing merely to benefit from the "stay and delay," the Court must recognize this at the earliest possible time.  In adopting § 362(c)(3), Congress intended the Court to conduct an early triage of a case to determine if the case has a reasonable likelihood of success.  *In re Charles,* 332 B.R. at 542.  Indeed, this triage appears to be the analysis contemplated by § 362(c)(3)(C)(i)(III).  Absent exceptional circumstances, a debtor fails to sustain her burden of demonstrating good faith as to the creditors to be stayed if the case lacks a reasonable likelihood of success.

However, upon a showing that the new case has a reasonable probability of success, the Court continues the analysis and considers the totality of the circumstances in determining whether subjective good faith exists under § 362(c)(3).  In reviewing the totality of the circumstances, the Court considers (i) the nature of the debts; (ii) the nature of any collateral; (iii) eve of bankruptcy purchases; (iv) the debtor's conduct in the present case; (v) reasons why the debtor wishes to extend the stay; and (vi) any other circumstances that weigh on the wisdom of an extension.

10

Nonetheless, because the focus of § 362(c)(3) is on a debtor's good faith "as to the creditors to be stayed," the Court holds that a new case is conclusively filed in good faith as to a creditor that so stipulates.  If a creditor to be stayed stipulates that the case is filed in good faith as to that creditor, the Court's inquiry necessarily concludes without consideration of objective or subjective good faith and the automatic stay is extended.

In summary, there are no published opinions analyzing the good faith requirement in § 362(c)(3).  The Court therefore adopts the test set forth in the below chart to determine whether the new case was filed in good faith as to a creditor:

| Issue | Result |
|---|---|
| 1.  Whether the creditor to be stayed agrees that the new case was filed in good faith with respect to that creditor. | If so, the inquiry ends and the Court extends the stay.  If not, the Court must proceed to the next inquiry. |
| 2.  Whether the new case is likely to result in a bankruptcy discharge (i.e., the objective test). | If not, the inquiry ends absent exceptional circumstances.  If so, the Court must proceed to the next inquiry. |
| 3.  Whether other factors show that the case was filed in good faith with respect to the creditor to be stayed (i.e., the subjective test). | The listed subfactors should be considered on the totality of the circumstances.  No one factor should be determinative. |
| A. Nature of the debt. | |
| B. Nature of the collateral. | |
| C. Eve of bankruptcy purchases. | |
| D.  Debtor's conduct in the present case. | |
| E.  Reasons why the debtor wishes to extend the stay. | |
| F.  Other circumstances that weigh on the wisdom of the extension. | |

1.    **The position taken by creditors against whom an extension of the stay is sought.** In this case, Citifinancial agreed that this case was filed in good faith as to Citifinancial. Ms. Charles' previous case was voluntarily dismissed at Citifinancial's request. Citifinancial had informed Ms. Charles that its loss mitigation department would not negotiate with her during the pendency of her prior case. Although the out-of-court negotiations ultimately proved unsuccessful, Citifinancial acknowledged that Ms. Charles was proceeding in good faith. Accordingly, the Court extends the automatic stay as to Citifinancial based on its stipulation.

Ms. Charles' motion seeks to extend the stay as to all creditors. No other creditor took a position as to whether this case was filed in good faith as to that creditor. Accordingly, when a creditor has not stipulated that the case was filed in good faith as to that creditor, the Court must independently consider good faith as to that creditor. *See* 11 U.S.C. § 362(c)(3)(B).

2.    **The likelihood that the new case will result in a bankruptcy discharge.** This issue considers the objective good faith analysis. If a case is filed after a previous case has been pending during the preceding year, the Court must consider whether the new case is likely to be successful.[6] If the newly-filed case is likely to result in another dismissal (whether voluntary or involuntary), then the newly filed case is likely not filed in good faith as to any non-consenting creditor.

In this case, the Court finds that there is a reasonable likelihood that this case will result in a chapter 13 discharge. To obtain a chapter 13 discharge, a debtor must obtain a confirmed chapter 13 plan and must perform under that plan. 11 U.S.C. § 1328(a).[7] On a preliminary basis,

---

[6] This type of forward-looking scrutiny is common in other analyses. *See, e.g., Sierra Club v. Espy*, 38 F.3d 792, 798 (5th Cir. 1994) (the moving party must establish a substantial likelihood of success on the merits in order to obtain a preliminary injunction).

[7] Under certain circumstances, a debtor may obtain a limited discharge for partial performance. 11 U.S.C. § 1328(b)–(c).

Ms. Charles' proposed plan appears to satisfy all confirmation requirements of § 1325.  Among these is a requirement that the debtor will be able to make all payments under the plan and comply with the plan.  11 U.S.C. § 1325(a)(6).

At the time of the hearing on this matter, Ms. Charles had already filed her proposed chapter 13 plan.[8]  The plan provides that Ms. Charles make 60 monthly payments of $1,215.  On Schedule I, Ms. Charles lists her total monthly income as $3,216.  Ms. Charles' income consists of monthly social security receipts in the amount of $1,071 and a monthly contribution from her daughter in the amount of $2,145.  Ms. Charles' daughter holds two nursing jobs.  The Court heard extensive evidence concerning the income earned by Ms. Charles' daughter from these two jobs, each of which she has held for more than four years.  The daughter's paychecks are directly deposited into a joint account with Ms. Charles, as are Ms. Charles' monthly social security checks.  The Court also heard extensive evidence with respect to Ms. Charles' monthly expenses.  Ms. Charles' daughter testified that she lives with her mother and that her housing expenses are included in those listed on Ms. Charles' schedules.  The daughter further testified that she has no personal debt for real property or vehicles.

Ms. Charles has arranged to have the chapter 13 trustee automatically debit her joint account each month for the amount of the proposed payment to the chapter 13 trustee.  It is this Court's experience that a chapter 13 plan is substantially more likely to succeed with an automatic debit from a bank account or a wage order.  Based on the evidence, the Court concludes that Ms. Charles' plan is likely to be confirmed, that she is likely to perform under the plan, and that she is likely to obtain her chapter 13 discharge.  Accordingly, Ms. Charles has met

---

[8] In her schedules filed in this case, Ms. Charles lists 23 debts.  Three of these debts are secured by liens against her homestead.  The remaining debts are unsecured and total less than $30,000.

her threshold burden as to good faith.  Nonetheless, the Court must continue the analysis to ensure that the case is filed in good faith as to the creditors to be stayed.  11 U.S.C. § 362(c)(B).

　　3.　　**Non-exclusive list of factors relevant to the determination of whether good faith exists.**  Once the Court makes a threshold determination that the debtor is likely to obtain a discharge, the Court moves on to a subjective good faith analysis, considering the following factors:

　　A.　　**The nature of the debt held by the creditor.**  Because the evaluation of good faith in the statute requires the Court to determine whether the case was filed in good faith "as to the creditors to be stayed," the Court must consider the nature of the debt.  If the debt was incurred for reasonable and necessary living expenses, the Court is more likely to find that the debtor's relationship with the creditor (and thus the filing of the case) is characterized by good faith.  If the debt arises from questionable conduct by the debtor, the Court is less likely to characterize the debtor's relationship with the creditor (and thus the filing of the case) as one of good faith.  Each situation may be unique.  Debts may arise from fraud, violence, or the purchase of luxury goods and services.  In each instance, the Court will be required to weigh the relationship between a particular debt to the filing of the bankruptcy case in reaching its overall determination.  In this case, all of Ms. Charles' debts appear to arise out of the purchase of the necessities of life.  This factor weighs in favor of a good faith finding.

　　B.　　**The nature of the collateral held by the creditor.**  If the creditor is secured by the debtor's homestead, by a sole source of transportation or by other necessities, the Court is more likely to find that the debtor's actions are in good faith.  As with the evaluations set forth above, there will be a continuum.   The Court is more likely to find

14

that a debtor acts in good faith to forestall the foreclosure of a home or the repossession of a sole source of transportation but less likely to find that a debtor acts in good faith to re-file a case to forestall the repossession of a luxury item—such as a pleasure boat or a vacation timeshare.  In this case, the sole secured debt is the debtor's home.  This factor weighs in favor of a good faith finding.

**C.     Eve of bankruptcy purchases.**  It is settled law that a debtor's good faith should be questioned if the debtor makes purchases in contemplation of a bankruptcy case.  *See, e.g., In re Vianese*, 192 B.R. 61, 72 (Bankr. N.D.N.Y. 1996); *In re Barnes*, 158 B.R. 105, 108-09 (Bankr. W.D. Tenn. 1993).  Accordingly, the Court will examine the date on which debts were incurred in evaluating whether the plan was filed in good faith with respect to those creditors with recent claims.  In this case, there is no evidence of recent purchases by Ms. Charles.  This weighs in favor of a good faith finding.

**D.     The debtor's conduct in the present case.**  The Court should examine the debtor's conduct to see if the present case is filed in a *bona fide* effort to obtain a discharge.  Important inquiries include whether the debtor attended required meetings with the trustee, filed her schedules and statements, and otherwise performed her duties under the Bankruptcy Code and Rules.  In this case, Ms. Charles promptly filed her plan, sought to make her payments with an automated clearinghouse deduction from her bank account, and timely filed her schedules and statements.  The Court finds that her conduct weighs in favor of a good faith finding.

**E.     The reasons why the debtor wishes to extend the automatic stay.**  The Court should determine the true purpose of the stay extension.  If the purpose is to extend the stay to avoid the loss of an essential asset (such as a home or a sole source of

15

transportation), then the purpose weighs in favor of an extension of the automatic stay. If the purpose is to delay or harass a creditor, it weighs against the extension of the automatic stay. The essential purpose of the new case cannot be to impose the automatic stay in order to delay a foreclosure, a lawsuit, or other collection activity. Such "stay and delay" tactics do not constitute good faith as to the creditors who are delayed.

In this case, Ms. Charles seeks to extend the automatic stay to avoid the diversion of her attention and resources to her unsecured creditors. She alleges that such a diversion would interfere with her ability to focus her resources on saving her home. The Court does not find this reasoning to be persuasive.

In every case, debtors would prefer an extension of the stay as to all creditors. Prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the filing of a chapter 13 bankruptcy petition resulted in a stay against property of the estate that remained in effect until the property was no longer property of the estate. The fact that Congress amended § 362 to provide that the stay automatically terminates with respect to debts or property in certain cases evinces Congressional intent that the stay no longer apply in whole or in part to every debtor seeking the protections of the Bankruptcy Code. Instead, Congress intended that repeat debtors support a request for an extension of the stay as to each creditor with evidence of circumstances justifying the extension. No special circumstances are shown in this case. Accordingly, the Court finds that this factor does not support extending the stay in Ms. Charles' case.

**F.     Any unique circumstances.** Finally, the Court should consider any facts or circumstances peculiar to a case. In this case, the Court finds that the reason for the dismissal of Ms. Charles' first case—to allow negotiations with her home lender—should

16

be considered as a factor in determining the good faith of this case.  This case is a natural by-product of the failed negotiations following the first case.  Her actions in the two cases combined show that she is approaching her insolvency in good faith as to all of her creditors.  Accordingly, this factor weighs in favor of an extension of the stay.

The Court does not merely count the factors weighing in favor of and against a subjective good faith finding.  Rather, the Court considers the factors based on the "totality of the circumstances."  Based on the foregoing evaluation of Ms. Charles' subjective good faith, the Court finds that this case was filed with subjective good faith.

### Equitable Factors

Although a debtor's good faith may authorize the extension of the stay, the statute does not mandate that the Court grant relief upon such a showing.  11 U.S.C. § 362(c)(3)(B).  Instead, the statute provides that "the court *may* extend the stay in particular cases as to any or all creditors" once the requirements of § 362(c)(3)(B) are satisfied.  *Id.* (emphasis added).  The discretion arises from the statute's use of the word "may" rather than "shall" when setting forth whether the relief should be granted.  *Jama v. Immigration and Customs Enforcement,* 125 S.Ct. 694, 703 (2005).  As set forth in *Jama,* "may" customarily connotes discretion. *See, e.g., Haig v. Agee*, 453 U.S. 280, 294, n.26 (1981).  Consequently, a movant must demonstrate sufficient equitable factors to justify the court's exercise of its discretion.  *In re Charles*, 332 B.R. at 542-43.

In the present case, Ms. Charles filed her motion in good faith seeking an extension of the stay to prevent a scheduled foreclosure on her major asset—her home.  No objections to Ms. Charles' motion were filed.

The potential benefits to Ms. Charles if the automatic stay is extended are patent. If successful, she may be able to retain her homestead, which alone raises substantial equitable considerations in the debtor's favor. *In re Osborne*, 379 F.3d 277, 284 (5th Cir. 2004). Moreover, equitable factors require the Court to consider competing interests. In this case, no creditor opposed the extension of the automatic stay. Accordingly, the Court has no direct, corresponding equities to consider against an extension of the automatic stay. Nevertheless, the evidence before the Court indicates a substantial probability that all creditors in this case will be paid not less than they would be paid if the debtor's assets were liquidated in a chapter 7 bankruptcy case. Accordingly, the Court finds that the equities of this case favor the extension of the automatic stay as to all creditors.

## Conclusion

Ms. Charles filed this case in good faith as to all creditors in this case and the equities favor an extension of the automatic stay. Accordingly, the Court extends the automatic stay as to all creditors.

Signed at Houston, Texas, on November 30, 2005.

MARVIN ISGUR
United States Bankruptcy Judge